Helen B. GREEN and John R. Green, Appellants,

v.

Annie PLUTT, Appellee.

No. S–3098.

Supreme Court of Alaska.

April 20, 1990.

Edward A. Merdes, Fairbanks, for appellants.

Dennis M. Bump, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Chief Justice.

This case involves a four-car, rear-end collision. The jury found that the defendant, Annie Plutt, driver of the last car in line, was not negligent. The plaintiff, Helen Green, driver of the second car, appeals, contending primarily that her motion for a directed verdict or judgment NOV should have been granted.

The following statement of facts takes that view of the evidence which is most favorable to Plutt.[1] The accident occurred at approximately 7:45 a.m., December 19, 1984 on Farewell Street in Fairbanks. Farewell Street is straight, paved, and about 40 feet wide. It had snowed the night before and there were snow berms on each side of the street reducing the width of the travelled portion to approximately 25 feet. The roadway surface was icy. The accident occurred before sunrise, but there were street lights which Plutt described as "pretty bright."

The first vehicle was a jeep driven by Watson. It was going west, apparently without taillights, when its engine failed. It came to a stop in the travelled portion of the street. Green, who was also traveling west on Farewell Street, saw the jeep and braked to a stop behind it. According to Watson, Green's vehicle slightly tapped his vehicle in the process.

At a time described by Watson as a minute to a minute and a half later two cars turned onto Farewell Street from the D Street intersection, just east of where the Green and Watson vehicles were stopped. Cogan, coming from the north on D Street, turned right to travel west on Farewell. He was followed immediately by Plutt who was coming from the south on D Street. She made a left turn to place her vehicle in the west-bound lane of Farewell just behind Cogan's Blazer. Although Plutt's attorney characterized the time as "rush hour," there were no cars on Farewell Street which were sufficiently close to

the intersection to be a hazard for Plutt as she turned onto Farewell. Before turning, Plutt did not see the Green and Watson vehicles although her vision was not obscured. She said that if the Green or Watson vehicles had been displaying either flashing lights or brake lights she would have seen them. She describes the accident as follows:

> As soon as I turned the corner, I was right behind [the Blazer], his brake lights came on and I put mine on. . . . but it was so slick and I slid into him.

Cogan's Blazer was propelled by the collision with Plutt into Green's vehicle which was in turn pushed into Watson's jeep. Plutt did not know whether Cogan's Blazer had come to a complete stop before the collision, but testified that Cogan had told her that he had stopped and she assumed that was true.

Green argues that she was entitled to a directed verdict on the issue of Plutt's negligence or, alternatively, judgment NOV. She contends that Plutt was necessarily inattentive or travelling too closely behind Cogan's Blazer or driving too fast. The question which we must answer is whether based on the above evidence a reasonable jury might conclude that Plutt was not negligent. *Hahn v. Russ*, 611 P.2d 66, 67 (Alaska 1980).

Several of our prior decisions involving rear-end accidents are relevant. In *Hahn,* we held that a directed verdict should have been granted in favor of the driver whose vehicle was struck from behind in rush hour stop-and-go traffic. We stated:

> Where there is no reason to anticipate the conduct of the preceding driver, the driver who follows may not be responsible for the collision. . . . However, in the instant case, Russ rear ended Hahn in heavy rush-hour traffic. One should expect sudden stops in heavy traffic, especially when it has recently been stop-and-go. If Russ had been following at a safe distance, he should have been able

---

1. This is required on review of denials of motions for a directed verdict or judgment NOV.

*Hahn v. Russ,* 611 P.2d 66 (Alaska 1980).

to stop before he collided with Hahn's car.

611 P.2d at 67–68.

In *Grimes v. Haslett,* 641 P.2d 813 (Alaska 1982), we again concluded that a directed verdict should have been granted in favor of the plaintiff whose car had been rear ended. The plaintiff had stopped for a car ahead which was making a left turn. Plaintiff was able to come to a complete stop but the car behind crashed into her vehicle. We stated:

> Left turns onto business premises are a fairly routine traffic event. [Plaintiff] testified that the car ahead signalled before it turned, and that she had time to come to a complete stop: [Defendant], for no apparent reason, could not stop in time. [Defendant] admitted that she was probably following too close and that she felt that this caused the accident. Moreover, [Defendant] offered no proof that the accident was the fault of an unexpected occurrence.

641 P.2d at 813.

Most recently in *Blackford v. Taggart,* 672 P.2d 888 (Alaska 1983), we found that a jury verdict in favor of the defendant, who had rear ended the plaintiff, was sustainable. The accident occurred at night in conditions of poor visibility and the surface of the street was slick. Traffic was light and the plaintiff stopped his vehicle in the travelled portion of the street without signalling his intention to stop or turn. The brake lights in the plaintiff's vehicle were inoperative. The defendant reasonably thought that the plaintiff's vehicle was still moving. Plaintiff's stop in the travelled portion of the roadway without displaying brake lights suggested "unusual or unexpected conduct by [the plaintiff] which could not reasonably have been anticipated by [the defendant]." 672 P.2d at 890.

This case is not a perfect factual match with any of the above cases. It is unlike *Blackford* because the vehicle ahead of Plutt had operating brake lights which were plainly visible to Plutt and its driver had been able to stop safely when he saw Green's vehicle. This case is distinguishable from *Hahn v. Russ,* because the traffic was not stop-and-go just before the accident.

*Grimes v. Haslett,* is closest, but Plutt did not admit that she was probably following too closely as the defendant in *Grimes* did, and the stop in *Grimes* was necessitated by the left turn of a preceding vehicle rather than by a stalled vehicle. We do not regard these differences as decisive. *Grimes* should have been decided the same way even if the driver had not made the admission that she was probably following too closely. Further, just as turning vehicles expectably may cause vehicles which follow them to stop, so may a wide variety of relatively commonplace events, including stalled vehicles. The significant similarity between this case and *Grimes* is that in both cases the driver in front of the defendant, having seen a hazard, was able to stop safely whereas the defendant was not.

Under the facts of this case it is our view that the court should have granted Green's motions for directed verdict and for judgment NOV. Plutt should have anticipated that vehicles on city streets are often called upon to make sudden stops. Her speed and following distance should have been such that she could stop safely when the Blazer braked to a stop.[2] In this case, as in *Grimes* and *Hahn,* if Plutt had been following at a safe distance she would have been able to stop before she collided with the car in front of her. We can perceive of no explanation for the accident which does not include negligence on her part.[3]

2. *Breitkreutz v. Baker,* 514 P.2d 17 (Alaska 1973), involved a rear-end accident in which the preceding vehicle was brought to a sudden stop by a collision with a third vehicle which had crossed into its lane of traffic. Just after this collision the defendant rear ended the preceding vehicle. The unusual deceleration which may have been caused by the initial accident distinguishes *Breitkreutz* from this case where the stop made by the Blazer was accomplished only by braking.

3. Numerous authorities are in accord. *E.g., Supanchick v. Platt,* 51 Wash.App. 861, 756 P.2d 146 (1988). There, four vehicles were driving down the left-hand lane of a dry, two-way street on a clear day in Spokane, Washington. The first car stopped suddenly and signaled an intent to turn left. The second driver applied her

Accordingly,[4] the judgment is REVERSED and the case is REMANDED with directions to conduct a new trial on the issue of damages.

MOORE, Justice, with whom RABINOWITZ, Justice, joins, dissenting.

On July 19, 1987, the superior court granted partial summary judgment to the plaintiff Helen Green on the issue of the negligence of the defendant Annie Plutt. Plutt filed a petition for review in this court asking us to reverse the superior court's order. We granted the petition and reversed and vacated the order. We then remanded the case to the superior court so "that the matter [can] proceed to a jury trial on the issues of liability and damages."

Three years later, now that the jury has heard the evidence and unanimously decided that Plutt was not negligent, the court decides that it should not have let the issue of negligence go to the jury in the first place. The crucial premise for the court's conclusion is that the driver of the vehicle in front of Plutt, Cogan, was able to stop. *Supra* at 1349. Yet, Plutt admitted this fact for purposes of her petition for review three years ago. Under the court's rationale, the superior court's grant of partial summary judgment on the negligence issue should have been affirmed. Therefore, the court's holding today that Green was entitled to a directed verdict or judgment notwithstanding the verdict on the negligence issue is inconsistent with the court's earlier holding that the negligence issue should have gone to the jury. Since there was no new evidence presented at trial that would support the court's ruling that Plutt was negligent as a matter of law, I dissent.

The evidence presented at trial shows that the court's earlier ruling was correct. The court reverses the jury's determination that Annie Plutt was not negligent based on a strained reading of the trial transcript coupled with an erroneous application of the standard of review. I believe that this is a clear invasion of the function of the jury to determine the facts and render a just verdict.

The denial of a motion for a directed verdict or judgment notwithstanding the verdict should be affirmed when, "viewing the evidence in the light most favorable to the non-moving party, reasonable jurors could differ in their assessment of the particular issue." *Kavorkian v. Tommy's Elbow Room*, 694 P.2d 160, 163, *modified on reh'g*, 711 P.2d 521 (Alaska 1985). The non-moving party is entitled to the benefit of all factual inferences which are fairly supported by the evidence. *Breitkreutz v. Baker*, 514 P.2d 17, 20 (Alaska 1973). "The test is objective; and, if there is room for diversity of opinion among reasonable people, the question is one for the jury." *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 220 (Alaska 1978). The court does not re-weigh the evidence or judge the credibility of witnesses. *Id.*

Although the court purports to apply this standard of review, it completely ignores certain testimony supporting the finding that Plutt was not negligent. For example, Plutt testified that she was driving only ten to fifteen miles per hour, about the same speed as Cogan's Blazer. I believe that a reasonable jury might infer from this testimony that Plutt was not traveling at an excessive rate of speed. Moreover, the police officer who investigated the accident testified that the roads were covered with

---

brakes and stopped her automobile without collision. The third driver, plaintiff, applied his brakes but still bumped into the second car; however, he caused no damage. The fourth driver, defendant, applied his brakes but slid into the third car causing damage; the jury returned a verdict in favor of defendant. On appeal, the court reversed the denial of a motion for directed verdict. *See also, Lehr v. Gresham Berry Growers*, 231 Or. 202, 372 P.2d 488 (1962) ("If two vehicles are proceeding in the same traffic lane, and the following vehicle strikes the rear of the leading vehicle, in absence of other circumstances, reasonable minds could only conclude" that the driver of the following car was negligent); *Aemisegger v. Herman*, 215 Mont. 347, 697 P.2d 925 (1985) (following driver negligent as a matter of law despite icy road conditions); *Spano v. Yandle*, 493 P.2d 696 (Colo.App.1971); *Henderson v. Meyer*, 533 P.2d 290 (Utah 1975).

4. Our disposition of this case moots the other point raised by appellant.

snow and that several accidents had occurred that morning. From this testimony, the jury might infer that road conditions were such that an accident might occur even if Plutt exercised reasonable care under the circumstances.

In addition to ignoring this important testimony, I believe that the court's analysis of our prior decisions draws many factual inferences in favor of Green, the moving party, rather than Plutt, the non-moving party. For example, the court concludes that this case is distinguishable from *Blackford v. Taggart,* 672 P.2d 888 (Alaska 1983) because "the vehicle ahead of Plutt had operating brake lights which were plainly visible to Plutt and its driver had been able to stop safely when he saw Green's vehicle." *Supra* at 1348–49. Each of these assertions views the evidence in the light most favorable to Green.

It is undisputed that Cogan's vehicle had operating brake lights; Plutt testified that Cogan's brake lights flashed and that she braked when she saw them. The court infers from this fact that Cogan's brake lights must have been illuminated for an extended period and that Plutt was inattentive in not seeing them sooner. However, the only evidence in the record indicates that Plutt applied her brakes as soon as the driver ahead of her did so.[1] This testimony leaves open several possibilities in which Plutt's conduct may not have been negligent. For example, it is possible that Cogan slowed his Blazer by downshifting and applied his brakes just before he stopped completely. Another possibility is that Cogan was inattentive and did not apply his brakes until the last minute. Thus, the mere fact that Cogan's brake lights flashed does not mean that they flashed early enough to warn Plutt that the Blazer was coming to a stop. Viewing the evidence in the light most favorable to Plutt, I believe that a jury might reasonably infer that Plutt was faced with a sudden and unexpected occurrence, and although she exercised reasonable care, she was unable to avoid the collision.

Similarly, the fact that Cogan's Blazer was able to stop without striking Green's car does not mean that Plutt must have been negligent. Green testified that she stepped on her brakes repeatedly to activate her brake lights when she saw Cogan's Blazer approaching in her rear view mirror, because she was afraid that he would run into her. Cogan had the benefit of an unobstructed view of the road and an early warning which gave him some opportunity to stop safely. In contrast, Plutt could not see Green's car, because Cogan's vehicle blocked her view. As soon as she saw Cogan's brake lights flash, she applied her own brakes, but was unable to stop. Because Plutt could not see the stopped vehicles and did not have the benefit of the early warning supplied by Green's flashing brake lights, I cannot conclude as a matter of law that Plutt was negligent because Cogan was able to stop.

The court's reliance on our decision in *Grimes v. Haslett,* 641 P.2d 813 (Alaska 1982) also is misplaced. In *Grimes,* we vacated a jury verdict in favor of a defendant who rear-ended the car in front of her because the defendant (1) admitted in an affidavit that she had been following too closely, and (2) failed to present evidence that the accident resulted from an unexpected occurrence. 641 P.2d at 819. In this case, the court rewrites the *Grimes* rationale, concluding that the salient fact was that the car ahead of the defendant was able to stop safely. *Supra* at 1349.

This case is distinguishable from *Grimes* because Plutt testified that she did not think that she was following too closely. Moreover, there was evidence from which the jury might infer that Cogan's stop was an unexpected occurrence. Finally, as I have explained, the fact that Cogan was able to stop the Blazer safely does not compel the conclusion that Plutt was negligent.

Since reasonable jurors could differ on the question whether Plutt was negligent, I would affirm the jury verdict in her favor.

---

1. Cogan was not deposed, nor did he testify at trial.